# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**NORMA BOWMAN**,

       Plaintiff,

v.

                                                                           No.07-CV-00118-BB

**HOME DEPOT U.S.A., INC.,** a Delaware
Corporation,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc.41]. The Court, having considered the motion, response, reply, and relevant law, and being otherwise fully informed, finds that the motion will be **GRANTED** as regards Plaintiff's Breach of Implied Contract and Disparate Treatment-Failure to Promote claims under Title VII and the New Mexico Human Rights Act and **DENIED** on Plaintiff's Disparate Treatment-Discriminatory Discharge claims and claim for punitive damages.

## I. Background[1]

Plaintiff Norma Ann Bowman brought the underlying suit claiming that Defendant Home Depot, her former employer, discriminated against her on the basis of her sex, in its failure to promote her and in its termination of her employment. She has also brought a claim asserting that Home Depot breached an implied contract with her when it terminated her. Plaintiff's claims arise out of two distinct sets of events, first the hiring process for the position of store manager at the Rio Rancho Home Depot store, and second her termination.

Plaintiff, at the time she applied for the position as store manager in late 2005, had been an employee of Home Depot for almost 12 years. During her years at Home Depot, Plaintiff had

---

[1]The following facts are either undisputed or construed in the light most favorable to Plaintiff, the non-moving party.

moved up through the ranks from cashier, and eventually worked as a store manager, a regional install sales manager, and in her final position as the remodel manager at stores in Colorado and New Mexico. As a remodel manager, Ms. Bowman had the title of co-store manager, though her primary responsibility was the remodeling of the store, rather than day to day management.

Through the internal Home Depot system, known as the RMA process, Ms. Bowman applied for a position as store manager that had opened up at the Rio Rancho store in late 2005. The RMA process is a computer based program which preselects candidates who are qualified for an interview. Also selected for an interview was Mr. Steven Hulette, an individual who had been with Home Depot for six years and was an Assistant Manager, a position which he held in the Albuquerque store at the time of the interview. Mr. Hulette also had seven years of experience at Home Base, a competitor to Home Depot. Several other individuals were also selected for an interview. Ms. Bowman was the only female selected for an interview. While Mr. Hulette was interviewed in person for the position, Ms. Bowman interviewed for the position via cell phone. Mr. Hulette was selected for the position rather than Ms. Bowman.

In January 2006, while she worked on the remodel of the Santa Fe store, Ms. Bowman was told by District Manager Ken Lawrence, her supervisor, that she had to clear out "the cage," a storage area for various unwanted and damaged merchandise. Ms. Bowman and Assistant Manager Davey Lopez worked overnight to clear out the cage as ordered, moving some merchandise inside, sending some merchandise to other stores, and marking down and throwing away a good portion of the merchandise. As the dollar amount of the unwanted and damaged merchandise that had been thrown away exceeded Ms. Bowman's markdown limit, Mr. Lawrence recommended that Home Depot terminate Ms. Bowman. Ms. Bowman was terminated two months later, in March, 2007. Mr. Lopez was never disciplined for his role in the event.

## II. Legal Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

2

of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999).

In the Title VII context, where the plaintiff does not have direct evidence of disparate treatment, the Court applies the three part burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), to determine whether the plaintiff's case survives summary judgment. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Under this framework, the Plaintiff must first establish a prima facie case of prohibited employment action. *Id.* If the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* If the employer meets this burden, then summary judgment is warranted "unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.*

Defendant has not argued that the analysis of Plaintiff's claims under the New Mexico Human Rights Act differs from the analysis of Plaintiff's claims under Title VII. As such the analysis of Plaintiff's claims regarding discriminatory discharge and failure to promote under federal law applies equally to these claims under New Mexico law.[2]

---

[2]The New Mexico Human Rights Act tracks the language of the Federal Civil Rights Act of 1964. *Smith v. FDC Corp.,* 787 P.2d 433, 436 (N.M. 1990). As such, the New Mexico courts look to federal law for guidance in determining whether there has been a violation of the New Mexico Human Rights Act. *Id.* The courts are careful to note, however, that there is no intention to adopt federal law as New Mexico law, nor bind the courts to interpretations made by the federal courts of the federal statute. *Id.* Thus while the New Mexico courts generally follow the burden shifting paradigm developed in *McDonnell Douglas*, 411 U.S. at 802, they have noted that "[t]his framework, however, is not a required method of proof; it is only a tool to focus the issues and to reach the ultimate issue of whether the employer's actions were motivated by impermissible discrimination." *Smith,* 787 P.2d at 437. That noted, the analysis for both discriminatory discharge and failure to promote is almost exactly the same under New Mexico law as it is under federal law, and any differences in the law would not alter the result in this case. *See Silverman v. Progressive Broad., Inc.*, 964 P.2d 61, 66 (N.M. App. 1998); *Gonzales v. N.M. Dep't of Health*, 11 P.3d 550, 557 (N.M 2000).

*A. Discriminatory Discharge*

To establish a prima facie case for discriminatory discharge Plaintiff must show that (1) she belonged to a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) the position was not eliminated after her discharge.[3] *Adamson v. Multi Cmty. Diversified Servs.*, 514 F.3d 1136, 1150 (10th Cir. 2008); *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1229 (10th Cir. 2000). Defendant claims that Plaintiff has not established her prima facie case because she has not shown that she was treated less favorably because of her sex. However, the Tenth Circuit has made clear that all that is required at the prima facie stage of the *McDonnell Douglas* analysis is for the plaintiff to raise an inference of discrimination, and the plaintiff is not required to dispel the non-discriminatory reasons subsequently proffered by the defendant. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000). Plaintiff has provided evidence that she was a member of a protected class, was qualified for her job as Remodel Manager, and she was terminated. There is no evidence that the position was eliminated after her discharge. Thus it appears that Plaintiff has met her burden for establishing her prima facie discriminatory discharge claim.

Once Plaintiff has made a prima facie showing, the burden then shifts to Defendant to state a legitimate, nondiscriminatory reason for its adverse employment action. *Plotke*, 405 F.3d at 1099. Defendant has stated that it terminated Plaintiff because she marked down thousands of dollars in store merchandise, exceeding her $1,000 markdown limit as a store manager. [Defendant's Motion at 12]. Defendant states that she did this without the proper approval, and that this is a major violation of Home Depot's code of conduct and a terminable offense. [Defendant's Motion at 12].

Having given a nondiscriminatory reason for its employment action, the burden then shifts back to Plaintiff to show a genuine issue of material fact that this reason is pretextual. A

---

[3] Defendant erroneously cites the generic elements of a sex discrimination claim laid out in *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007), to support its contention that Plaintiff has not established a prima facie case for discriminatory discharge. As the Tenth Circuit has detailed the specific standard applicable to the discriminatory discharge scenario in *Kendrick* and its progeny, the Court will apply this more specific test to determine whether Plaintiff has established her prima facie case.

plaintiff can show pretext by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Plotke*, 405 F.3d at 1102 (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997)).  Evidence of pretext may include, but is not limited to, "prior treatment of plaintiff...disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria. *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999). Plaintiff presents two arguments to rebut Defendant's proffered rationale: first, Plaintiff argues that she was treated differently than Mr. Davey Lopez, the Assistant Manager; second Plaintiff asserts that there were procedural irregularities in Home Depot's termination of her.

### *i. Disparate Treatment*

Plaintiff asserts that Home Depot's failure to punish Mr. Lopez, who assisted in the marking down of the items in question, establishes pretext. A plaintiff who wishes to establish pretext "often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Kendrick*, 220 F.3d at 1230.  The Tenth Circuit has defined similarly situated individuals as "those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Defendant admits that prior to Plaintiff's actions marking down the merchandise, she was told "in no uncertain terms" by her supervisor, District Manager Ken Lawrence, that "he wanted the merchandise out of the caged area." [Defendant's Motion at 5].  Much of the merchandise in the cage is alleged to have been damaged, broken, and water ridden due to exposure to the elements. [Deposition of Norma Ann Bowman at 129]. Plaintiff provides evidence that she discussed with her store manager, Jennipher Ball, and Assistant Store Manager Davey Lopez, the steps that should be taken to comply with Mr. Lawrence's directive. [Deposition of Norma Ann Bowman at 126].  At this meeting, Plaintiff alleges that Mr. Lopez stated, "I know what we can do with it. There's a big trash can sitting outside," and in response Ms. Ball, the store manager, stated "Do

5

what you've got to do, and I don't want to know anything about it."[4]  According to Mr. Lopez some of the merchandise was moved into the store, some of the merchandise was sent to other stores, and some of the merchandise was thrown out. [Deposition of Davey Michael Lopez at 47-49].  While Ms. Bowman captured and recorded what was done with each item, Mr. Lopez actually placed the items in the trash can, and both Ms. Bowman and Mr. Lopez have provided evidence that they worked together in all of the events of the evening. [Deposition of Norma Ann Bowman at 118-121, 128]; [Statement of Davey Michael Lopez].  Plaintiff has additionally provided evidence that both she and Mr. Lopez answered to Ms. Ball [Deposition of Norma Ann Bowman at 101], and that Plaintiff had no supervisory authority over assistant store managers such as Mr. Lopez. [Deposition of Jennipher Ball at 22].  Despite Mr. Lopez's active participation in the events of the evening, his own acknowledgment of his participation in those events in a written statement, and his managerial role at the store, Mr. Lawrence recommended Ms. Bowman's termination, but appears to have recommended no disciplinary action for Mr. Lopez.  Mr. Lopez stated that he was never punished for the events of the evening. [Deposition of Davey Michael Lopez at 79]; [Deposition of Kenneth F. Lawrence at 59].

     Defendant argues that Mr. Lopez is not a similarly situated individual and thus his disparate treatment cannot provide evidence of pretext. [Defendant's Motion at 13]. Essentially Defendant argues that Ms. Bowman directed Mr. Lopez to throw out the merchandise and that the difference in their job titles[5] undermines any argument that they are similarly situated.

---

[4]While these are out of court statements offered as proof of the matter asserted, they are admissions by a party opponent, as both the statement by Ms. Ball and the statement by Mr. Lopez concern a matter within the scope of their employment and were made during employment. Fed. R. Evid. 801(d)(2); *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1 (10th Cir. 2000) (finding out of court statements admissible where made in the scope of employment and during employment); *cf. Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1266 n.5 (10th Cir. 2005) (finding out of court statements inadmissable because they did not concern a matter within the scope of declarant's employment).  As such they are admissible into evidence as non-hearsay.

[5]Ms. Bowman had the title of Co-Store Manager, while Mr. Lopez was an Assistant Store Manager.

The Tenth Circuit standard regarding similarly situated individuals does not look to the titles of the individuals in question, but rather looks at whether the individuals answered to the same supervisor and were subject to the same standards regarding performance and discipline. Construing the present record in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented evidence that, notwithstanding their disparate titles, both Ms. Bowman and Mr. Lopez were answerable to Ms. Ball for the day to day management of the store,[6] and that Plaintiff had no supervisory authority over Mr. Lopez or other assistant store managers. In addition, both Mr. Lopez and Ms. Bowman were subject to the same code of conduct, which Defendant asserts defines Plaintiff's actions as a terminable offense. Thus there is sufficient evidence for a jury to conclude that Ms. Bowman and Mr. Lopez were similarly situated and that she was punished with termination while Mr. Lopez was not punished at all.

Defendant additionally provides a disciplinary notice of Mr. Shane Liston,[7] a male store manager at a different store who Defendant claims was also terminated for exceeding the $1,000 markdown allowance. While it is doubtful that Ms. Bowman and Mr. Liston would be considered similarly situated for purposes of the Tenth Circuit standard, Defendant presents this example as proof that it enforces its code of conduct consistently. On the disciplinary notice presented, however, exceeding the markdown limit is only one of many offenses listed. The disciplinary notice, unlike Ms. Bowman's disciplinary notice, details numerous issues, including issues

---

[6]This factual evidence is further bolstered by the fact that Ms. Bowman had to obtain Ms. Ball's approval, as store manager, on the markdown forms that she submitted. [Markdown Forms, Deft. Exh. 1]

[7]Plaintiff contends that the discipline notice of Mr. Liston cannot be considered as evidence because it is unauthenticated and unsigned; Plaintiff also contends that it was disclosed after the close of discovery. In terms of the form of the document, the Court notes that at the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Nonetheless, "the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir.1995). While the notice appears to be admissible under the business record exception to the hearsay rule (once authenticated), as the Court is construing the notice in the Plaintiff's favor to deny summary judgment, it need not reach a decision on the potential admissibility of this document at this time. For the same reason the Court need not decide whether the document is inadmissible due to the claimed discovery violation.

"regarding store conditions and holding [the] team accountable;" issues following instructions; issues regarding a perceived relationship between the store manager and a subordinate; and numerous warnings regarding his conduct prior to termination. [Discipline Notice of Shane Liston]. Plaintiff in contrast had only exceeding her markdown allowance listed on her notice of termination. [Discipline Notice of Norma Bowman].

   *ii. Procedural Irregularities*

  Even if Mr. Lopez were not considered a similarly situated individual, the evidence presented regarding the absence of any disciplinary action for the exact conduct that resulted in Ms. Bowman's termination, combined with the events attendant to Ms. Bowman's termination, raise significant questions regarding Ms. Bowman's termination and are sufficient for Ms. Bowman to establish a genuine issue of material fact as to pretext. As noted previously, procedural irregularities provide evidence of pretext. *Simms,* 165 F.3d at 1328. The Court notes that Defendant admits that prior to Plaintiff's actions marking down the merchandise, she was told "in no uncertain terms" by her supervisor, District Manager Ken Lawrence, that "he wanted the merchandise out of the caged area." [Defendant's Motion at 5]. After Mr. Lawrence discovered *how* Plaintiff had complied with his directive, he took a written statement from Ms. Bowman and Mr. Lopez, and verbally communicated to Kim Ardo, the Human Resources Manager, that he believed Ms. Bowman should be terminated. [Deposition of Ken Lawrence at 59]. Ms. Bowman was not actually terminated until approximately two months later, on March 16, 2007. [Disciplinary Notice]. In the time preceding her termination, Ms. Bowman was left in charge of the Santa Fe store for approximately three weeks, while store manager Jennipher Ball was on leave. [Deposition of Jennipher Ball at 62].

  Despite what appears to be a clear policy that someone of Ms. Bowman's tenure and seniority may only be terminated with the approval of a Human Resources Vice President and the Vice President of the Business Unit, the approval portion of Plaintiff's Disciplinary Notice was actually signed by Ken Lawrence, the District Manager. Mr. Lawrence was also the individual who actually terminated Ms. Bowman, from his cell phone in his car, via speaker phone at the Santa Fe store. [Deposition of Jennipher Ball at 70]. The only evidence provided regarding any

procedure followed in the firing of Ms. Bowman is the Disciplinary Notice, signed by Mr. Lawrence, the District Manager. Home Depot's termination policy as stated on the Disciplinary Notice requires that "[a]ll Disciplinary Actions must go through the approval process prior to issuance to an associate...The HRVP and VP of the business unit must approve any disciplinary action for an associate at or above the facility/store manager level or an associate with ten...or more years of service." [Discipline Notice of Norma Ann Bowman].  Thus Mr. Lawrence did not actually have the authority to approve Ms. Bowman's termination.  Defendant has submitted an affidavit of Kimberly Ardo, Regional Human Resources Manager, stating that she personally obtained approval for Ms. Bowman's termination from the Human Resources Vice President, and that this individual's signature was not required on the disciplinary notice. [Declaration of Kimberly Ardo at ¶6].  However, the alleged approval of the Vice President is an out of court statement that is sought to be admitted for the truth of the matter asserted, and thus is inadmissable hearsay and may not be considered by the Court.[8]  As such, construing the evidence in the light most favorable to the Plaintiff, there is no evidence that Defendant actually followed its own procedures in the termination of Ms. Bowman. This procedural irregularity, considered in light of the totality of the circumstances surrounding Ms. Bowman's termination, including the lack of punishment of Mr. Lopez, the two-month gap between the offense and her termination, and the fact that Ms. Bowman has presented evidence that she was actually following Mr. Lawrence's instructions when she emptied the cage of items, are sufficient for Plaintiff to establish a genuine issue of material fact as to whether her firing was, in fact, pretextual.

Given the evidence of disparate treatment and the totality of the circumstances surrounding her termination, Plaintiff has satisfied her burden and summary judgment is inappropriate at this time.

---

[8] While Defendant couches the approval in terms of Ms. Ardo's personally obtaining the approval of the Vice President, Defendant wishes the Court to accept the truth of the matter asserted, that the Vice President actually gave approval for Ms. Bowman's termination.  The Vice President's statement is thus inadmissible hearsay. *See Thomas*, 48 F.3d at 485 (noting "hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)).

*B. Failure to Promote*

As with Plaintiff's discriminatory discharge claim, Plaintiff must first establish a prima facie claim for failure to promote. Once Plaintiff has made a prima facie case, the burden then shifts to Defendant to state a legitimate non-discriminatory reason for its failure to promote Plaintiff. *Santana v. City and County of Denver*, 488 F.3d 860, 864 (10th Cir. 2007). Once the Defendant has provided a nondiscriminatory reason for its employment action, the burden then shifts back to Plaintiff to show a genuine issue of material fact that this reason is pretextual. *Id.*

To establish a prima facie case of disparate treatment based on failure to promote, Plaintiff must show that (1) there was a promotional opportunity available; (2) she was qualified and had established availability for the position; (3) despite the her qualifications, she was not promoted to the position; and (4) the promotional opportunity was filled.[9] *See Sprague v. Thorn Ams.*, 129 F.3d 1355, 1362 (10th Cir. 1997); *Mortensen v. Callaway*, 672 F.2d 822, 823 (10th Cir. 1982).[10]

Defendant argues that Plaintiff has not met her burden for establishing a prima facie claim because she and Mr. Hulette did not have the same qualifications. [Defendant's Motion for Summary Judgement at 15]. As noted above, at the prima facie stage Plaintiff need not show that she had the exact same qualifications as the individual promoted, but rather that she was qualified for the position. *Sprague,* 129 F.3d at 1362. There is sufficient evidence to support Ms. Bowman's contention that she was qualified for the position. Mr. Hurst, who was involved in the process noted that the only individuals granted interviews for the position were deemed

---

[9]Defendant erroneously states that the fourth prong of the prima facie test for discriminatory failure to promote requires Plaintiff to establish that "Home Depot then continued to seek applications from persons with Plaintiff's qualifications." [Defendant's Motion for Summary Judgment at 14]. Plaintiff need not establish that Defendant continued to seek applications from others, and rather must simply show that the position was filled by another. *See Mortensen,* 672 F.2d at 823.

[10]There are some cases that appear to indicate that Plaintiff must establish that the position was filled by an individual who is not a member of the protected class. *See, e.g., Sprague,* 129 F.3d at 1362. The Tenth Circuit has noted, however, that it has never actually formally required such a showing, and that such a requirement appears to only exist in dicta. *Perry v. Woodward*, 199 F.3d 1126, 1136 (10th Cir. 1999).

sufficiently qualified by the computerized Home Depot selection system, the "RMA process." [Deposition of Anthony Troy Hurst at 38]. Thus it appears that Plaintiff was identified as objectively qualified by Home Depot for the stated position, despite her qualifications she was not promoted, and Mr. Hulette was promoted in her stead. As such Plaintiff has met her burden for establishing her prima facie case.

The burden then shifts to Defendant to provide a legitimate non-discriminatory reason for selecting Mr. Hulette over Ms. Bowman. Defendant states that it chose Mr. Hulette over Ms. Bowman because of his significant management experience at Home Depot and other home improvement retailers. Defendant also notes the confidence expressed by Mr. Hulette in his own abilities to manage the Rio Rancho store and his research of the store in preparation for the interview as important factors in the decision making process, [Defendant's Motion at 15, Declaration of Kimberly Ardo at ¶13]. Defendant additionally notes that Ms. Bowman expressed a lack of confidence in her own abilities during her interview and has presented evidence that Mr. Hulette received more favorable reviews from his superiors. [Deposition of Anthony Troy Hurst at 40, 73].

Once Defendant has provided a non-discriminatory reason for its hiring decision, the burden shifts back to Plaintiff to show a genuine issue of material fact that this reason is pretextual. A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotations omitted). Evidence of pretext may include prior treatment of plaintiff; disturbing procedural irregularities; and the use of subjective criteria. *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005).

Defendant's primary reasons for hiring Mr. Hulette are his years of experience and his superior interview performance.[11] Ms. Bowman counters with the following arguments as to

---

[11]Defendant also asserts in various places Mr. Hulette's bachelor's degree as an additional rationale for his hiring. This does not appear to be a primary argument however, and there is copious evidence that having a college degree is not necessary to serve as a store manager at

why the Court should reject these reasons and find pretext: (1) Ms. Bowman was given a phone interview while Mr. Hulette was interviewed in person; (2) Ms. Bowman was presently in the position as Manager, and thus the move would have been a lateral one for her, while Mr. Hulette was only an Assistant Manager; and (3) Ms. Bowman proved she could effectively handle a store when she acted as store manager in early 2006, several months following the interview process. [Plaintiff's Response at 25-26].

The Court will draw an inference of pretext where "the facts assure us that the plaintiff is better qualified than the other candidates for the position." *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003). The Tenth Circuit has noted that "pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants, but only by demonstrating an overwhelming merit disparity." *Santana v. City & County of Denver*, 488 F.3d 860, 865 (10th Cir. 2007).

Ms. Bowman's evidence fails to establish an overwhelming disparity between her qualifications and those of Mr. Hulette. While Ms. Bowman had more years of experience at Home Depot, Mr. Hulette appears to have had more years of experience overall in home improvement retail, and more recent experience in the day to day management of a Home Depot store. [Deposition of Anthony Troy Hurst at 45-46]. Ms. Bowman cites her current experience in a managerial role as evidence of her superior qualifications, yet it appears that her primary role was the management of the remodel rather than the day to day management of the store and that she admitted she felt out of touch with the daily operations of the store [Deposition of Norma Ann Bowman at 101, 104]. Ms. Bowman cites as evidence of her qualifications her management of the store during store manager Jennipher Ball's leave of absence. However, as she did not fill this role until at least two months after she applied for and was rejected for the store manager position, this experience could have had no bearing on the failure of Home Depot to promote her.

---

Home Depot. [Deposition of Anthony Troy Hurst at 20]. There is also evidence that Jennipher Ball, the store manager of the Santa Fe store, Anthony Hurst, Interim District Manager, and Ken Lawrence, District Manager, did not have college degrees [Deposition of Jennipher Ball at 86-7, Deposition of Anthony Troy Hurst at 12, Deposition of Kenneth F. Lawrence at 29].

*See Kendrick,* 220 F.3d at 1231 (noting that the court assesses pretext by examining the facts as they appear to the person making the decision to promote).

Mr. Hulette additionally appears to have interviewed much better than Ms. Bowman. There is evidence that the interviews for both candidates followed a script, and that both candidates earned between a three and a five on a five point rating scale. [Deposition of Anthony Troy Hurst at 17-18, 39]. Ms. Bowman, however, appears to have expressed some reservations regarding her ability to manage during her interview, [Deposition of Anthony Troy Hurst at 72]; [Deposition of Norma Ann Bowman at 104], while Mr. Hulette appears to have expressed confidence in his ability to manage the store and had specific ideas as to what kinds of changes he would implement at that particular store. [Deposition of Anthony Troy Hurst at 73]. While it is somewhat troubling that Ms. Bowman was interviewed over the phone and Mr. Hulette was interviewed in person, this disparity does not appear to have affected the process of selecting a candidate.

Some of the criteria given by Home Depot for the selection of Mr. Hulette, such as confidence and vision, are subjective criteria. The Tenth Circuit has noted that while subjective criteria are not wrongful per se, "[o]bvious subjective decision making provides an opportunity for unlawful discrimination." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (quoting *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir.1981)). However, there is a measure of subjectivity in any interview-based selection process, and Ms. Bowman has not presented evidence that the subjective criteria were used as a means for unlawful discrimination. *See Santana,* 488 F.3d at 866. As such Ms. Bowman has failed to raise a genuine issue as to Defendant's motivation for hiring Mr. Hulette, or produce evidence showing that its stated reasons were pretextual. Thus summary judgment on this claim is appropriate.

*C. Breach of Implied Contract*

Defendant next seeks to dismiss Plaintiff's claim for breach of implied contract. Plaintiff claims that Home Depot's employee code of conduct constituted an implied contract which Home Depot breached by terminating Plaintiff's employment without complying with the policies/procedures set out in the code of conduct. Specifically Plaintiff claims: (1) that Ms.

13

Bowman was terminated for an offense not listed as a terminable offense in the Code of Conduct, and (2) that Home Depot did not comply with its termination policy, as delineated on the disciplinary notice. [Plaintiff's Response at 27].  Under New Mexico law, employment without a definite term is presumed to be at will. *Garrity v. Overland Sheepskin Co.*, 917 P.2d 1382, 1385 (N.M. 1996); *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993).  Where an at-will employment relationship exists, the employer and employee both have the right to terminate the employment relationship at any time and for any reason. *Trujillo v. Northern Rio Arriba Elec. Coop.*, 41 P.3d 333, 341 (N.M. 2001).  The New Mexico courts have found an exception to the at-will employment rule where "the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge." *Lopez v. Kline*, 953 P.2d 304, 305 (10th Cir. 1997). A representation in an employee handbook or personnel policies may contractually modify the at-will presumption. *Hartbarger*, 857 P.2d at 780.  To create contractual rights, however, the terms of the representation must be sufficiently explicit to create a reasonable expectation of an implied contract. *Trujillo*, 41 P.3d at 341-42.  The reasonableness of expectations is "measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartbarger*, 857 P.2d at 783.

While the Court agrees with Plaintiff that the extensive and rather specific list of terminable and non-terminable offenses in the Home Depot Code of Conduct could potentially create an implied contract under New Mexico law[12], Plaintiff's alleged violation is not listed in either category, and the Major Work Violations section specifically notes "[e]xamples of prohibited conduct include, but are not limited to, the following conduct." [Code of Conduct at 5].  As such, Plaintiff could not have formed a reasonable expectation that Home Depot would not terminate her for her conduct, and thus no implied contract was created. Plaintiff additionally

---

[12]For example if Defendant had terminated Ms. Bowman for an offense specifically listed as a "Minor Work Rule Violation" this could potentially give rise to breach of implied contract claim, regardless of general language in the code of conduct expressly reserving the right to terminate an employee at any time.  *See, e.g., McGinnis v. Honeywell, Inc.*, 791 P.2d 452, 457 (N.M. 1990) (noting "[a] contractual disclaimer does not automatically negate a document's contractual status and must be read by reference to the parties' 'norms of conduct and expectations founded upon them.'") (internal quotations omitted); *Mealand v. Eastern New Mexico Med. Ctr.,* 33 P.3d 285, 292 (N.M. App. 2001).

relies upon a representation in her disciplinary notice, which she did not receive until the date she was disciplined, for her argument that Defendant was bound to obtain the signature of a Vice President of Human Relations to properly fire her. [Plaintiff's Response at 27]. As Plaintiff did not receive this notice until after she was terminated, the procedures detailed on the notice could not have modified her employment relationship with Home Depot. Even if the Court considered the disciplinary notice an offer by Home Depot to restrict its power to terminate, there was no acceptance by Plaintiff, thus the notice could not form an implied contract. *See, Hartbarger*, 857 P.2d at 782-83 (finding that mutual assent is necessary to find an implied contract where employer offered to restrict its power to discharge, and this assent may be shown by continuing or commencing employment). Consequently Plaintiff could not form a reasonable expectation of an implied contract under New Mexico law and the Court will grant summary judgment on this claim.

*D. Plaintiff's Claim for Punitive Damages*

Finally, Defendant seeks to dismiss Plaintiff's claim for punitive damages. A plaintiff suing under Title VII may be awarded punitive damages "if the employer engaged in discriminatory practices with malice or with reckless indifference to the plaintiff's federally protected rights." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1189 (10th Cir. 2007).[13] As there are multiple issues of fact as regards Plaintiff's Title VII claim, it would be premature to reach any conclusion as to the appropriateness of punitive damages in this case. Consequently, summary judgment on this claim is inappropriate at this time and will be denied.

ORDER

For the above stated reasons, it is hereby ORDERED that the Defendants' Motion for Summary Judgment [Doc. 41] be, and hereby is GRANTED as regards Plaintiff's Breach of Implied Contract and Disparate Treatment-Failure to Promote claims under Title VII and the New Mexico Human Rights Act (claims one, two, and five) and DENIED on all other claims.

---

[13] Punitive damages are, however, not recoverable under the New Mexico Human Rights Act. *Trujillo*, 41 P.3d at 344.

Dated this 23rd day of April, 2008.

                                              BRUCE D. BLACK
                                              UNITED STATES DISTRICT JUDGE